UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NATHAN READOUS,

    Petitioner,

v.                                    Case No. 2:14-cv-97
                                        HON. ROBERT HOLMES BELL

JEFFREY WOODS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

        Petitioner Nathan Readous filed this petition for writ of habeas corpus challenging his bench-trial conviction for armed robbery, first-degree home invasion, unlawful imprisonment, possession of a firearm during the commission of a felony, felon in possession of a firearm, unlawfully driving away a motor vehicle, and felonious assault. Petitioner was sentenced as a third habitual offender to concurrent terms of imprisonment of 18 to 40 years for armed robbery, 5 to 20 years for first-degree home invasion, 5 to 15 years for unlawful imprisonment, one to five years for being a felon in possession of a firearm, 1 to 5 years for unlawfully driving away a motor vehicle, and 1 to 4 years for felonious assault. Petitioner was sentence to a consecutive term of imprisonment of 5 years for his second offense felony-firearm conviction. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

        Petitioner alleges that:

        I. Petitioner was denied the right to effective assistance of trial
           counsel.

II. Offense Variable 8 was mis-scored and based on inaccurate information.

III. Due process requires resentencing where the third habitual offender notice listed two prior drug convictions that actually represented only one prior drug conviction for marijuana and resulted in an enhanced sentence based on inaccurate information.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than

this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that he was denied the right to effective assistance of trial counsel. The Michigan Court of Appeals rejected this claim stating:

- 3 -

Because this Court denied defendant's motion to remand for a *Ginther* hearing, our review is limited to mistakes apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). To establish his claim of ineffective assistance of counsel, defendant must demonstrate that counsel's performance fell below an objective standard of professional reasonableness, and that it is reasonably probable that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* Defendant must overcome the strong presumption that the challenged actions of counsel constituted reasonable trial strategy. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Further, we will not substitute our judgment for that of counsel on matters of trial strategy, or evaluate counsel's performance from the perspective of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). We review for clear error any factual findings of the trial court but review de novo the ultimate constitutional question. *LeBlanc*, 465 Mich at 579.

First, defendant argues that his trial counsel was ineffective for failing to challenge the in-court identification of defendant by the victim, Sharon Hans. A pretrial identification procedure that is unduly suggestive requires any subsequent in-court identifications be suppressed unless there is an independent basis for them. *People v Gray*, 457 Mich 107, 114-115; 577 NW2d 92 (1998). An identification procedure is unduly suggestive when it creates "a substantial likelihood of misidentification," which often occurs when one suspect is singled out in some way during the identification. *Id.* at 111. But an on-scene identification that occurs shortly after a crime "to obtain reliability in the apprehension of suspects" is not necessarily improper. *People v Libbett*, 251 Mich App 353, 362; 650 NW2d 407 (2002).

In this case, Hans did not identify defendant in-person, but she was presented with a picture of him. She then confirmed that he was the perpetrator. But the police obtained the picture based on information Hans provided, including defendant's first name and where he lived. In essence, Hans had already identified defendant, and the photo was used merely to confirm his identity. Regardless, there are multiple independent bases supporting Hans's in-court identification of the defendant.

> The following factors indicate an independent basis supports the in-court identification:

- 4 -

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup [sic] of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000).]

Here, Hans had lived next to or across the street from defendant for at least two years; she exchanged greetings with him on multiple occasions. Hans had ample opportunity to see defendant during the robbery, which lasted approximately 30 minutes. Defendant was not wearing any mask or disguise, and Hans had multiple face-to-face interactions with him during the robbery. Hans identified defendant almost immediately after the robbery was over and the police arrived. She knew his first name and where he lived. Hans also consistently identified defendant as the perpetrator, to her neighbor right after she escaped, to the police, and in court. Because of these numerous independent bases for Hans's identification of defendant, any challenge to it by counsel would have been futile. See *Jordan*, 275 Mich App at 668.

Second, defendant alleges that his trial counsel was ineffective for failing to call a cell tower expert to testify. Defendant suggests that an expert *could have* determined his location during the crime, and thus provided an alibi defense. Defendant cannot establish his claim of ineffective assistance of counsel with speculation that an expert would have testified in his favor. *Payne*, 285 Mich App at 190. Further, defendant must demonstrate that calling the expert would have changed the trial's outcome. *Id.* Based on the facts in the record, there is no reason to believe that a cell tower expert would have testified that defendant was not in Detroit when he called his sister or Jeffrey Monaghan.

Third, defendant contends that his trial counsel was ineffective for failing to seek DNA testing for the extension cords recovered from Hans's home, which were used to tie her up during the robbery. Again, defendant merely speculates that DNA would have been

> recovered, and that this DNA would exonerate him; therefore, defendant has not shown that his trial counsel's failure to request DNA testing was outcome-determinative.
>
> Fourth, defendant argues that his trial counsel was ineffective for failing to object to Officer Robert Kane's testimony. Kane was asked about the search for fingerprints in Hans's home and car. He responded that there were no fingerprints found. First, this is not hearsay. Second, most of this testimony was actually elicited by defense counsel. An attorney has wide discretion regarding matters of trial strategy. *LeBlanc*, 465 Mich at 578. Moreover, Officer Kane's testimony was helpful to defendant because it established that his fingerprints were not found at the crime scene or in the stolen car. Consequently, defendant did not suffer any prejudice.
>
> Finally, defendant claims his trial counsel was ineffective for failing to challenge the accuracy of the prosecution's notice of sentence enhancement under MCL 769.11. The information and amended information alleged that defendant was convicted in July 2000 of delivery of marijuana and in October 1998 of attempted delivery of marijuana. Defendant argues that these allegations reflected only one conviction and that he was prejudiced because he was sentenced based on inaccurate information. The record does not support defendant's claim. The presentence information report (PSIR) confirms defendant's two prior convictions as the prosecutor alleged.[2] MCL 769.13(5)(d). Any error in the information as to the dates of the convictions is a technical defect subject to corrective amendment at any time. *People v Hornsby*, 251 Mich App 462, 472; 650 NW2d 700 (2002); MCL 767.76; MCR 6.112(H).
>
> ---
> [2] The prosecutor has also attached court register of actions to its brief confirming two separate prior convictions as alleged in the information and amended information. MCL 769.13(5)(c).

Michigan Court of Appeals Opinion. PageID.525-527, ECF No. 7-8 (one footnote omitted). The Michigan Supreme Court denied Petitioner's request to review this appellate decision by leave, "because we are not persuaded that the questions presented should be reviewed by this Court." PageID.740, ECF No. 7-9.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To

establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the judicial review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA") (citing *Harrington*, 562 U.S. at 102).

Petitioner argues that his trial counsel was constitutionally ineffective in five different instances: (1) Counsel failed to file a critical pretrial motion to suppress Petitioner's in-court identification by the victim which resulted from an unduly suggestive single photo show-up. PageID.39-42, ECF No. 1-3.  (2) Counsel failed to call an expert on cell tower technology. PageID.43-45, ECF No. 1-3. (3) Counsel failed to request a DNA analysis on extension cords seized by the police from the crime scene to support Petitioner's misidentification and alibi defenses. PageID.45-47, ECF No. 1-3.  (4) Counsel failed to object to the officer-in-charge's inadmissible hearsay evidence.  PageID.47-49, ECF No. 1-3.  (5) Counsel failed to challenge the accuracy of the prior convictions in the notice to enhance his sentence.  PageID.50-52, ECF No. 1-3.

Regarding the first alleged instance, the Supreme Court considers identification testimony based on a single photo of a defendant to be unreliable only if it fails to meet the five *Biggers* factors, i.e., "the opportunity of the witness to view the criminal at the time of the crime, the witness' [sic] degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).  *See Howard v. Bouchard*, 405 F.3d 459, 472 (6th Cir. 2005).

Applying these factors to the facts in Petitioner's record, the victim had the opportunity to view the perpetrator at the time of the crime for about 30 minutes while the perpetrator was not wearing a facial mask or disguise.  PageID.268, 270-271, ECF No. 7-5. PageID.447, ECF No. 7-6.  The witness was the victim of an armed criminal, and not a "casual observer," which suggests that she was highly attentive. *See United States v. Crozier*, 295 F.3d 503, 511 (6th Cir. 2001) (finding that victims threatened with a gun "would have likely paid close

attention" to defendants' appearance) and *Howard*, 405 F.3d at 472-73 (stating that, generally, the court places "greater trust in witness identifications made during the commission of a crime").

Less than two hours after the crime, the victim, a 56 year old registered nurse, told the police that the perpetrator lived "next door;" that she had "seen him for over 2 years," that she had occasionally exchanged greetings with him, that she had talked to him on her front porch a week prior to the home invasion when he gave her a flyer about a security system, and that he was a "Black male, 40s, 5'10", Stocky Build, Round Face, Short Hair, Stubble beard, Gray Hoodie, Dark Blue Jeans." PageID.589-590, ECF No. 7-8. At the end of Petitioner's bench trial the court found the victim's testimony credible even after considering that the victim thought that the perpetrator was in his 40s while he actually was 33 at the time of the incident in April 2010 (PageID.800, ECF No. 7-9) and even though she did not put a numeric value on his weight, did not mention his hair line, scars, or complexion (PageID.290-292, ECF No. 7-5 and PageID.465, ECF No. 7-6). *See Howard*, 405 F.3d at 483-84 (finding "identifications otherwise reliable even when there are discrepancies in an earlier description"). The victim also told the responding police officers that the perpetrator's first name was Nathan or Nate which, after finding some mail with Petitioner's full name on it in the mailbox next door, allowed the officers to pull up Petitioner's photo for the victim on their computer system in their scout car. Seeing Petitioner's photo caused her to be "very upset." PageID.273-274, 316-318, ECF No. 7-5; PageID.490, ECF No. 7-6.

Even under cross-examination, the witness never wavered in her certainty that Petitioner was the man who had invaded her home. The time between the crime and her seeing Petitioner's photo was relatively short, less than two hours. Therefore, even if the single photo shown to her by the police was suggestive, her identification testimony did not thereby become

unreliable. Contrary to Petitioner's claim, then, the record does not suggest that her identification "resulted" from this photo or that her identification testimony was "tenuous." PageID.39-40, ECF No. 1-3.

Petitioner's appellate brief recites a number of insubstantial discrepancies and omissions in the victim's testimony similar to the ones already raised by counsel during trial. Yet these are hardly sufficient to show that trial counsel acted beyond the wide range of reasonable professional assistance when he did not file a pretrial motion to suppress victim's in-court identification, but instead chose to pursue a different trial strategy in an effort to raise reasonable doubt concerning the victim's identification. Petitioner merely alleges that this motion would have been "critical," but the record does not suggest that this motion would have been granted by the trial court or could have changed the outcome of the trial. Thus, in the opinion of the undersigned, Petitioner's claim fails to meet both *Strickland* prongs.

Petitioner alleges ineffective assistance of counsel for failing to call a cell tower expert to corroborate Petitioner's alibi defense. Petitioner admitted that he was at his mother's residence next to the victim's residence between 10 and 11 a.m. on April 23, 2010, the day of the crime. PageID.399, ECF No. 7-5; PageID.420, ECF No. 7-6. He also admitted that he did not have a driver's license and, thus, relied on someone else to drive him. PageID.378, 398, ECF No. 7-5. Despite these admissions, Petitioner claimed that he was in Ypsilanti during the incident, between 4 p.m and 4:30 p.m. that day which is about 40 miles from the victim's Detroit residence. PageID.397, ECF No. 7-5. To prove this, he produced two witnesses who testified that they talked to Petitioner by phone at about 3:30 p.m. and at 4:28 p.m. that day. Both witnesses admitted that they did not know Petitioner's location during those phone calls. PageID.346, 369, ECF No. 7-5;

PageID.494, ECF No. 7-6. Both witnesses claimed that Petitioner had the phone number in question for six months to a year despite Petitioner's claim that he had the phone number only for six weeks at the time of the crime. PageID.347, 351, 368, ECF No. 7-5. The trial court did not find any of the witnesses or Petitioner credible. PageID.467, 494-495, ECF No. 7-6.

To make these calls work for his alibi defense, Petitioner introduced cell phone and cell tower records as evidence in order to show (a) that he was the owner of the phone (number) in question and (b) that he was nowhere near victim's residence during the time of the incident because the 3:30 p.m. call hit a cell tower between Ypsilanti and Ann Arbor. PageID.438-439, 459-460, 464, ECF No. 7-6. However, trying to establish ownership of that phone proved difficult for Petitioner because the phone was not registered under Petitioner's name. PageID.472, ECF No. 7-6, (citing PageID.380-381, 388-391, 401-403, 405-406, ECF No. 7-5). Furthermore, Ypsilanti and Flint cell towers were hit even for calls made during the time Petitioner claimed to have been at his mother's house in Detroit, next door to the victim's residence. PageID.420, 443, ECF No. 7-6. Finally, and most importantly, Petitioner did not establish during trial that he actually possessed the phone that made those two calls. *See* PageID.476, ECF No. 7-6 (the trial judge stating that "the court cannot make a conclusion that the phone was in the possession of the Defendant at the time the alleged acts occurred"). Thus, even if counsel had brought in an expert who could testify that the phone was in the Ypsilanti area, that testimony would have been insufficient to establish Petitioner's alibi defense. Therefore, Petitioner has not established that counsel's failure to call on an expert witness was outside the scope of reasonable professional assistance or that it was prejudicial to him.

In his third ineffective assistance of counsel claim, Petitioner argues there was a "'reasonable probability' that the testimony of a DNA expert witness would have affected the

outcome of the trial." PageID.46, ECF No. 1-3 (citing *Strickland*, 466 U.S. at 694). However, Petitioner has not shown that there was any DNA on the cords used to tie the victim up or that this evidence would have exonerated Petitioner. In other words, Petitioner has not shown that this alleged omission was something other than a calculated strategic decision by counsel. Had Petitioner's DNA been found on the cords, his alibi and misidentification defenses would have collapsed. Had it not been found, little if anything would have been gained. Given that Petitioner's conviction rested chiefly on the victim's testimony, the alleged omission was not prejudicial to Petitioner.

    Petitioner argues, in his fourth claim of ineffective assistance of counsel, that since the forensic technicians who prepared the report were not witnesses at his trial, the report which was summarized by the officer in charge was inadmissible hearsay evidence. However, Petitioner fails to show why it would have been sound trial strategy for his trial counsel to attack the officer's testimony that there were no fingerprints found in the house, on the cords, or in the car. Certainly Petitioner cannot claim that the lack of physical evidence placing him at the crime scene was prejudicial to "substantiating [his] alibi and misidentification defenses." PageID.48, ECF No. 1-3.

    Petitioner claims ineffective counsel for failing to assert a mistaken identity defense. Petitioner believes that his counsel could have argued that the victim might have been robbed by his sister's boyfriend who not only lived next door to the victim but whose name was also on the flyer given to the victim a week prior to the crime. PageID.383-385, ECF No. 7-5; PageID.457, 463, ECF No. 7-6. Petitioner argues that if counsel investigated the DNA evidence and called the evidence technicians to the stand, the evidence would have positively exonerated Petitioner by establishing that his sister's boyfriend committed the crime. Since counsel did not do either of these, Petitioner

argues that he was prejudiced. Petitioner has not established that any exonerating evidence of this type existed. Furthermore, the victim never wavered in her identification of Petitioner, even when shown a picture of the boyfriend. PageID.274, 300-301, 409, ECF No. 7-5; PageID.466, ECF No. 7-6. Therefore, since Petitioner has presented no credible evidence even suggesting the involvement of his sister's boyfriend (or of someone else) in the crime, he cannot fault counsel for not exploring hypothetical avenues to prove alibi or misidentification.

Concerning the fifth alleged instance of ineffective counsel, Petitioner claims that counsel failed to object when the prosecution sought third habitual offender sentencing where the record only showed one prior felony conviction, resulting in "an invalid sentence based on inaccurate information." PageID.50, ECF No. 1-3. Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)); *Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at

447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's court records show that he pled guilty to two felonies under Mich. Comp. Laws § 333.7401(2)(d)(iii) prior to April 2010: First, he pled guilty to attempted delivery and manufacture of marijuana on July 29, 1996, and was sentenced to two years probation on October 19, 1998. PageID.882, ECF No. 7-9. Second, he pled guilty to delivery and manufacture of marijuana on May 18, 2000, and was sentenced on July 19, 2000. PageID.879-880, ECF No. 7-9. On that date, his earlier probation sentence was amended. PageID.883, ECF No. 7-9. Therefore, while the sentencing court explicitly relied on this information when it sentenced Petitioner (PageID.509-510, ECF No. 7-7), Petitioner has not shown that this information was materially false. Under these circumstances, trial counsel did not act unprofessionally by failing to object to the sentencing court's reliance on Petitioner's prior convictions. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that Offense Variable (OV) 8 was mis-scored and based on inaccurate information. The Michigan Court of Appeals rejected this claim stating:

Defendant also contends that the trial court abused its discretion in scoring OV 8 at 15 points because there is no evidence that he asported Hans to a place of greater danger. We disagree.

We review a sentencing court's scoring decision to determine whether the court properly exercised its discretion and whether evidence in the record adequately supports a particular score. *People v Phelps*, 288 Mich App 123, 135; 791 NW2d 732 (2010). Generally, if there is any evidence to support a scoring decision, it will be upheld. *Id.*; *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009). Disputed facts at sentencing are subject to the trial court's determination using the preponderance of the evidence standard. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

MCL 777.38 provides that the sentencing court is to score OV 8 at 15 points when, "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." The statute does not define "asported." *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003). The asportation element of forcible kidnapping requires some movement of the victim in furtherance of the kidnapping that is not merely incidental to the commission of an underlying lesser or coequal crime. *Id.* Victims are "asported" when they are moved "to another place or situation of greater danger" or "they [are] secreted from observation by others." *Id.* at 648.

This Court has upheld a 15-point score for OV 8 in criminal sexual conduct cases when a defendant moves a victim to a more secluded, and thus a more dangerous, location. See *Spanke*, 254 Mich App at 648 (the victims were moved to the defendant's home before he sexually assaulted them); *Steele*, 283 Mich App at 490-491 (the defendant took the victims to a trailer, a tree stand, and to a remote area on a dirt bike, where he sexually assaulted them); *People v Phillips*, 251 Mich App 100, 108; 649 NW2d 407 (2002) (the defendant took the victim in a car to an isolated area away from the road to sexually assault her). On the other hand, our Supreme Court has concluded that moving a victim within a house to a bedroom to rape her was incidental to the commission of the crime, and so did not constitute asportation. *People v Thompson*, 488 Mich 888; 788 NW2d 677 (2010).

Here, evidence supported the trial court's decision to score OV 8 at 15 points because defendant moved Hans to places of greater danger. Defendant forced Hans to walk with him throughout the house while

> he looked for money or a safe. By moving Hans from room to room with a gun pointed at her, defendant increased the possibility that Hans would be harmed and decreased Hans's chances of escaping. Hans had no opportunity to get away from defendant or call someone for help when defendant was right behind her, pointing a gun at her back. Furthermore, defendant forced Hans into the basement, where her chances of escape were even less likely. By moving Hans to the basement, a more secluded location, defendant also significantly reduced the possibility that someone would interrupt him during the commission of the crime. Because the evidence supports the conclusion that defendant asported Hans to a place of greater danger, the trial court did not abuse its discretion in scoring OV 8 at 15 points.

Michigan Court of Appeals Opinion, PageID.527-528, ECF No. 7-8.

The Michigan Supreme Court denied Petitioner's request to review this appellate decision by leave, "because we are not persuaded that the questions presented should be reviewed by this Court." PageID.740, ECF No. 7-9.

> Mich. Comp. Laws § 777.38(1) states:
>
> Offense variable 8 is victim asportation or captivity. Score offense variable 8 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
> (a) A victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense . . . 15 points
> (b) No victim was asported or held captive . . . 0 points.

When assessing 15 points for OV 8, the sentencing judge specifically recalled the fact that Petitioner "took her down to the basement." PageID.504-505, ECF No. 7-7. The trial record established that Petitioner in fact forced the victim to go down to the basement. PageID.265, ECF No. 7-5; PageID.448, 479, 481-482, ECF No. 7-6. Compared to the front door of the victim's home where the crime started or to the ground floor where most of it played out, the basement can reasonably be described as "another place of greater danger," as done by the state appeals court,

because forcing the victim into the basement "moved [her] away from the presence or observation of others." *People v. Chelmicki*, 305 Mich. App. 58, 70-71 (2014) (citing *Steele*, 283 Mich. App. at 491). Therefore, while the sentencing court explicitly relied on this information, the record does not show this information to be materially false. Thus, Petitioner fails to show that his constitutional rights were violated. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Finally, Petitioner restates his claim that he was sentenced as a third habitual offender based on inaccurate information because his Information Felony erroneously listed two prior felony convictions while there was actually only one according to the presentence report. The Michigan Court of Appeals rejected this claim stating:

> Defendant next argues that his due process rights were violated when he was sentenced as a habitual offender using inaccurate information. We disagree. This Court reviews unpreserved sentencing errors for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). As noted already, the PSIR confirmed the two prior convictions that supported sentence enhancement under MCL 769.13. If the dates of these convictions were inaccurately stated in the information and amended information, this technical defect may be corrected at any time. *Hornsby*, 251 Mich App at 472; MCL 767.76; MCR 6.112(H). Defendant has not established that plain error affected his substantial rights. *Kimble*, 470 Mich at 312.

Michigan Court of Appeals Opinion, PageID.528, ECF No. 7-8.

Under this claim, Petitioner specifically quotes his April 2010 Information Felony and its Amendment to support his constitutional claim. PageID.56, ECF No. 1-3. However, in light of

Petitioner's pertinent pre-2010 court record set forth above, there does not appear to be any material discrepancy. Petitioner was sentenced for the first felony of attempted delivery and manufacture of marijuana on October 19, 1998. Based on a guilty plea, Petitioner was sentenced for the second felony of delivery and manufacture of marijuana on July 19, 2000 based on a guilty plea. The Information and its Amendment summarized this record as (1) "on or about 10/19/98, he or she was convicted of the offense of attempt deliver/manufacture marijuana" and (2) "on or about 07/19/2000, he or she was convicted of the offense of delivery of marijuana." PageID.807, 809, ECF No. 7-9. Therefore, while the sentencing court relied on this information, Petitioner has not shown that this information was materially incorrect. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                            */s/ Timothy P. Greeley*
                                            TIMOTHY P. GREELEY
                                            UNITED STATES MAGISTRATE JUDGE

Dated: July 21, 2016